```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
LINDSEY DIAS,                       )
on behalf of herself and            )
all others similarly situated,      )
                                    )
                Plaintiffs,         )
                                    )
        v.                          )       CIVIL ACTION
                                    )       NO. 18-10691-WGY
GENESCO, INC. and                   )
HAT WORLD, INC.                     )
d/b/a LIDS,                         )
                                    )
                Defendants.         )
_____)

YOUNG, D.J.                                      March 19, 2019
```

**MEMORANDUM & ORDER**

**I.   INTRODUCTION**

In 2011, Congress enacted the Jurisdiction and Venue Clarification Act (the "Clarification Act"), Pub. L. No. 112-63, 125 Stat. 758 (codified at 28 U.S.C. §§ 1441, 1446). Among other things, the Clarification Act elucidated the procedure for analyzing whether removing defendants meet the amount-in-controversy requirement. See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). Here, the named

plaintiff, Lindsey[1] Dias ("Dias"), challenges the removal of her suit from the Massachusetts Superior Court on the ground that the Defendants, Genesco, Inc. and Hatworld, Inc. (collectively, "Lids"), miscalculated the damages that her suit seeks. Pl.'s Mot. Remand ("Mot. Remand") 1, ECF No. 11. Because the parties' briefing does not reflect the Clarification Act's standards for analyzing the amount in controversy, this Court ORDERS further briefing.

## II. BACKGROUND

This action arises out of Dias's employment as a store manager at a North Attleboro, Massachusetts retail store, Lids, from January 2015 until September 2015. Compl. ¶¶ 1, 4, ECF No. 1-1. In March 2018, Dias filed a putative class action complaint in the Massachusetts Superior Court alleging that Lids failed to pay store managers overtime. Id. ¶ 1. Dias claims this conduct violated the Massachusetts Overtime Law (the

---

[1] This Court assumes that Lindsey Dias is the true and correct legal name of the plaintiff. Defendants Genesco, Inc. and Hatworld, Inc. refer to Lindsey Dias as "Linda Dias" and "Lindsay Dias" in various filings. See, e.g., Notice Removal 1, ECF No. 1; Defs.' Answer And Defenses Pl.'s Compl. 1, ECF No. 7. The docket also identifies "Linda Dias" as the plaintiff. Nevertheless, the certified Massachusetts court record and the plaintiff's filings list "Lindsey" as the plaintiff's first name. Certified Massachusetts Ct. R. 1, ECF No. 8; see also, e.g, Pl.'s Mot. Remand 1, ECF No. 11. Consequently, this Court uses "Lindsey" as the plaintiff's first name and orders the parties to file an update with the Court if that understanding is incorrect.

"Overtime Law"), Massachusetts General Laws chapter 151, section 1A, and seeks back pay, treble damages, interest, and attorney's fees and costs.  Id. at 7-8.  Her complaint does not specify a particular amount of damages, and the civil cover sheet that she filed alongside her complaint lists damages as "TBD."  Id.; Certified Massachusetts Ct. R. 12, ECF No. 8.

In April 2018, Lids timely filed a notice of removal, citing diversity jurisdiction under 28 U.S.C. § 1332(a).  Notice Removal ¶ 6, ECF No. 1.  On April 20, 2018, Dias moved to remand, arguing that her damages fell short of the amount required for diversity jurisdiction.  Mot. Remand 1.  Although Dias and Lids briefed Dias's motion to remand, neither Dias nor Lids cited the Clarification Act's standards for calculating the amount in controversy.  See generally Defs.' Opp'n Mot. Remand ("Defs.' Opp'n"), ECF No. 18; Pl.'s Reply Supp. Mot. Remand ("Pl.'s Reply"), ECF No. 22.  This Court heard oral argument on Dias's motion on July 23, 2018 and took the matter under advisement.  Electronic Clerk's Notes, ECF No. 29.  On September 19, 2018, the parties jointly moved to stay the case for 45 days.  Joint Mot. Stay 1, ECF No. 32.  The Court granted the motion and administratively closed the case on September 20, 2018.  Order Closure, ECF No. 34.

Considering more than 45 days have passed without update from either party, the Court turns its attention to Dias's motion to remand.

**III. ANALYSIS**

Dias suggests that this Court remand this action to the Superior Court because the amount in controversy does not exceed $75,000. Mot. Remand 1, 3. In response, Lids posits that if Dias were to succeed in her suit, she would be entitled to damages totaling more than $75,000, accounting for the attorney's fees she incurred throughout the suit. Defs.' Opp'n 2-3. Dias disputes whether this Court ought include her prospective attorney's fees in its calculation of the amount in controversy. Pl.'s Reply 2-3.

**A.  Standard of Review**

A defendant may remove a case filed in state court to the local federal district court so long as the district court has original jurisdiction over the case. 28 U.S.C. § 1441(a); Universal Truck & Equip. Co., Inc. v. Southworth-Milton, Inc., 765 F.3d 103, 107-08 (1st Cir. 2014). Courts strictly construe the removal statute, In re Pharmaceutical Industry Average Wholesale Price Litigation, 509 F. Supp. 2d 82, 89 (D. Mass. 2007) (Saris, J.), and removing defendants bear the burden of showing federal jurisdiction, Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995).

Here, Lids suggests that this Court only has diversity jurisdiction over this case.[2]  Notice Removal ¶ 6.  Section 1332(a) of chapter 28 of the United States Code provides district courts with original jurisdiction "where the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states."  Although "[n]ormally" courts exclude attorney's fees from the calculation of the amount in controversy, they include such expenses where state law "allows plaintiffs to collect attorney's fees as part of their damages."  Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001).  Both Dias and Lids agree that the Overtime Law is such a state law.  Defs.' Opp'n 3; Pl.'s Reply 4.

The Clarification Act provides the procedure for determining the amount in controversy in diversity-jurisdiction removal cases.  28 U.S.C. § 1446(c)(2).  It instructs district courts to "deem[] . . . the amount in controversy" the "sum demanded in good faith in the initial pleading."  Id.  The district court may, however, rely on the damages figure asserted in the notice of removal when the "initial pleading seeks nonmonetary relief; or a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded."  Id.

---

[2] Lids does not contend that this Court has jurisdiction under the Class Action Fairness Act.  See Defs.' Opp'n 2.

§ 1446(c)(2)(A).  In either situation, the district court may rely on the notice of removal's asserted amount in controversy only where it is supported by the "preponderance of the evidence."  Id. § 1446(c)(2)(B).

As an initial matter, the Court cannot deem the amount in controversy the sum that Dias demanded in her initial pleading for a simple reason:  her complaint makes no specific demand.  Nor does the civil cover sheet she filed in the Superior Court.  See id. § 1446(c)(2); see also Compl. 7-8; Certified Massachusetts Ct. R. 12.  The Court thus must analyze whether it may accept the figure asserted in Lids's notice of removal.[3]

---

[3] The Court observes that there may be instances in which the Clarification Act does not set out the procedure for evaluating whether the amount in controversy exceeds the jurisdictional amount.  Take, for instance, a complaint for money damages that omits a specific damages demand filed in a state that neither prescribes nor proscribes, i.e. permits, a damages demand.  As such, the complaint would neither be for nonmonetary relief, nor would it be filed where state practice forbids a demand for a specific sum.  See 28 U.S.C. § 1446(c)(2)(A).  Determining the source of the amount in controversy pursuant to the Clarification Act then raises a few questions.

For one, can the second exception in subsection 1446(c)(2)(A)(ii) apply when the complaint lacks a specific demand?  The notice of removal may supply the amount in controversy when the complaint seeks a money judgment but "State practice . . . permits recovery of damages in excess of the amount demanded."  Id. § 1446(c)(2)(A)(ii).

Two readings of this provision appear to exist, and both readings pose possible problems for courts in this scenario.  First, the provision might allow reference to the notice of removal's amount in controversy where the state allows a greater recovery than the specific amount that the complaint demands.

This reading raises the possibility that no comparator exists for a court to use to decide whether the plaintiff could recover damages "in excess of the amount demanded." See id. Alternatively, a court could treat the complaint as demanding "zero" damages, thereby allowing the court to review any such complaint removed from a jurisdiction.

Second, subsection 1446(c)(2)(A)(ii) might refer to whether state rules in general permit a plaintiff to recover greater damages than those sought in a complaint. Put another way, the court's analysis of whether it could look to the notice of removal would turn on the state's civil procedure rules and practices as opposed to the demand in the plaintiff's complaint. Yet there may be a statutory lacuna when state practice binds the plaintiff to the damages demand in the original complaint. In this case, if the plaintiff had not included a damages demand, the Court would seem to be without any statutory procedure for reviewing whether the complaint meets the amount in controversy.

The Court would then face a tough decision as to what steps to take in the event that the case falls into a lacuna in the Clarification Act. Sections 1441 and 1446 seem to point in different directions: section 1441 states that defendants "may" remove a case when the local federal district court has original jurisdiction, whereas section 1446(c) describes the procedure for determining whether the district court has diversity jurisdiction over a removed case. When section 1446(c) does not provide a procedure, that absence may deprive defendants of their section 1441 right to remove the case.

Some authority seems to support that result. For one, a defendant's right to remove "is entirely a creature of statute," not the Constitution, so Congress could validly restrict the universe of cases subject to removal. Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) (citing Great N. Ry. Co. v. Alexander, 246 U.S. 276, 280 (1918)). Furthermore, the Supreme Court has instructed courts to construe strictly statutes against removal. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941).

Yet the Supreme Court also has emphasized that section 1441 requires district courts to exercise jurisdiction over cases within its original jurisdiction unless Congress has made an "express" exception to that rule. See Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691, 698 (2003). Although section 1446(c) may not create a mechanism to assess the amount in controversy in every case, it does not expressly forbid jurisdiction for cases falling in a statutory gap.

Although the notice of removal also does not specify the exact amount in controversy, it does assert that it exceeds $75,000.

---

At least two federal district courts have suggested that, where the Clarification Act is silent, courts ought revert to pre-Clarification Act protocol. Hogan v. Wal-Mart Stores E., L.P., No. CA 13-603 S, 2014 WL 66658, at *3 (D.R.I. Jan. 8, 2014); Garcia v. Geovera Specialty Ins. Co., Civ. A. No. 7:13-CV-114, 2013 WL 1967799, at *1-2 (S.D. Tex. May 10, 2013). While that might be the best approach where the Clarification Act did not alter past practice, the Court observes that past practice may have limited value in determining how, if at all, a court ought determine the amount in controversy when the action does not conform to the conditions that the Clarification Act governs.

The Court need not resolve such complicated questions here. Because the Clarification Act refers to "State practice," the Court takes the statute to instruct it to analyze Massachusetts practice generally, as opposed to this Massachusetts court complaint specifically. This Court thus rules that the Clarification Act allows it to substitute a removing defendant's amount in controversy even where the complaint seeks a money judgment because Massachusetts practice "permits recovery of damages in excess of the amount demanded." See 28 U.S.C. § 1446(c)(2)(A)(ii).

First, Massachusetts does permit a demand for a specific sum. While Massachusetts generally forbids specific damages demands in the complaint, the Commonwealth makes an exception for liquidated damages and specific demands that the plaintiff supports with an affidavit. See Mass. Gen. Laws ch. 231, § 13B. Consequently, Massachusetts permits a demand for a specific sum, even though it regulates the cases in which a plaintiff can make such a demand. See id.

Second, Massachusetts permits recovery in excess of the damages demanded in the complaint. Massachusetts Rule of Civil Procedure 54(c) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Only where the plaintiff wins a default judgment will a Massachusetts court hold a plaintiff to the specific sum he requested in his complaint. See id. This Court thus may consider the amount in controversy propounded by Lids's notice of removal so long as it "finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." See 28 U.S.C. § 1446(c)(2)(B).

Notice Removal ¶ 8.

**B.   Amount in Controversy**

The Court, at this juncture, cannot make the requisite findings of fact to rule on Dias's motion to remand for several reasons.  Dias and Lids neglected to cite the Clarification Act's procedure for assessing whether the case involves a sufficient amount in controversy.  The parties erred not by referring to the reasonable probability standard, but by failing to recognize that the Clarification Act requires the Court to make factual findings when the parties dispute the amount in controversy.  See Mot. Remand 5; Defs.' Opp'n 2; see also Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 50 (1st Cir. 2009) (ruling that "the reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard"); Dart, 135 S. Ct. at 553-54 (describing Clarification Act factfinding procedures).

The Supreme Court in Dart laid out the new landscape that the Court must traverse in determining the amount in controversy in a removed diversity case.  135 S. Ct. at 553–54.  After Congress enacted the Clarification Act, "when a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Id. at 554.  The Supreme Court cited the House

Judiciary Committee's Report's statement that "[i]n case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies." Id. (quoting H.R. Rep. No. 112-10, at 16 (2011)). Indeed, in a pre-Dart case, the First Circuit ruled that it need not defer to the district court's determination of the amount in controversy where the district court made no factual findings at all. Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 82 (1st Cir. 2014) (explaining that a district court may not simply discredit amount-in-controversy evidence as "speculative" without pointing to factual reasons why it is so).

The Court acknowledges that Dias controverts whether, as matter of law, the Court ought ever consider prospective attorney's fees in deciding whether a removed complaint meets the amount in controversy. Pl.'s Reply 2-3 (citing Barbuto v. Advantage Sales & Mktg., LLC, 148 F. Supp. 3d 145, 149 (D. Mass. 2015) (Talwani, J.) ("Fees that have not yet been incurred cannot be said to be in controversy at the time of removal.")). The Court reserves ruling on this issue but makes the following two observations:

First, if the Court were to rule that it could consider prospective attorney's fees, such a ruling might not provide much succor to removing defendants, who would still carry the burden of showing, by a preponderance of the evidence or

reasonable probability, that the case meets the amount-in-controversy requirement.  See 28 U.S.C. § 1446(c)(2); Dart, 135 S. Ct. at 553-54.  That appears to be a tough row for removing defendants to hoe at the beginning of a case.  See, e.g., Waith v. Amazon.com, Inc., Civ. A. No. 17-40141-TSH, 2018 WL 4092074, at *2-3 (D. Mass. Aug. 28, 2018) (Hillman, J.) (remanding case because defendant provided only "speculative" evidence that the case would be heavily litigated, as opposed to quickly settled or decided on summary judgment).

Beyond the practical difficulties of showing certain attorney's fees, if one were to take an economic view of the litigation, one would expect certainty about attorney's fees to facilitate settlement.  Under this view, litigation occurs when the divergence between the parties' predicted liability exceeds their costs of litigation (minus the savings of settlement). See Richard A. Posner, Economic Analysis of Law 780-81 (9th ed. 2014); see also Jonah B. Gelbach, The Reduced Form of Litigation Models and the Plaintiff's Win Rate, 61 J.L. & Econ. 125, 127 (2018).  Removing the uncertainty around the cost of going to court, then, ought reduce the number of cases that even reach the motion to remand stage.  But see Russell B. Korobkin & Thomas S. Ulen, Law and Behavioral Science: Removing the Rationality Assumption from Law and Economics, 88 Calif. L. Rev. 1051, 1094 (2000) (observing that people often engage in

motivated reasoning and "seem to use additional evidence to solidify their views, rather than to alter them").

In any event, the Court doubts that it could find any amount of prospective attorney's fees proven by a preponderance of the evidence or reasonable probability at the beginning of a case, although it reserves judgment on this particular motion.

Second -- and on the other hand -- the Court notes that it is well established that "[e]vents subsequent to removal that reduce the amount in controversy below the jurisdictional minimum do not divest a federal court of jurisdiction." Amoche, 556 F.3d at 51 (citing Coventry Sewage Assocs., 71 F.3d at 6). Accordingly, the Court wonders whether the possible short-circuiting of this litigation (thus reducing expenses) may count against the amount in controversy, as a reduced possible recovery gained by a partial grant of summary judgment would not. See 14AA Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper et al., Fed. Prac. & Proc. § 3702.4 & n.6 (4th ed. Nov. 2018 update) (observing that "even if part of the plaintiff's claim is dismissed, for example, on a motion for summary judgment, thereby reducing the plaintiff's remaining claim below the requisite amount in controversy, the district court retains jurisdiction to adjudicate the balance of the claim" (collecting cases)). Dias frames the issue differently; she says that the work conducted after removal cannot count in

the amount-in-controversy calculation.  Pl.'s Reply 3 n.3.  This reframing troubles the Court because the First Circuit has directed district courts to analyze the amount in controversy alleged in a complaint filed in the district court at the time of filing.  See Spielman, 251 F.3d at 6-7.  If Dias characterizes this issue correctly, then, it would seem that attorney's fees would never count in the amount-in-controversy calculation.

In any event, the Court declines to decide these issues here.  Instead, considering this case's procedural posture, the parties must clarify the status of the case and their positions in light of this opinion.

## IV. CONCLUSION

For the foregoing reasons, this Court ORDERS the parties to notify the Court as to the status of settlement talks.  If the case has not settled, the Court ORDERS the parties, within 30 days of the date of this order, to provide supplemental briefing explaining whether and how the Clarification Act affects this Court's analysis of the amount in controversy.  The Court further ORDERS the parties to clarify Dias's first name.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE